UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

| | |
|---|---|
| DION A. THOMPSON, | ) |
| Petitioner, | ) |
| v. | ) Case No. CV409-144 |
| DANNIE THOMPSON, *Warden*, and THE ATTORNEY GENERAL OF THE STATE OF GEORGIA, | ) |
| Respondents. | ) |

**REPORT AND RECOMMENDATION**

Dion Thompson, who is currently incarcerated at Smith State Prison in Glennville, Georgia, has petitioned the Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.) For the following reasons, the petition should be **DENIED**.

I. **BACKGROUND**

On April 14, 2005, a Chatham County, Georgia, jury convicted Thompson of three counts of aggravated assault, three counts of possession of a firearm during the commission of a crime, and one count

of possession of a firearm by a first offender probationer. (Doc. 1 at 4.) A superior court judge sentenced him to serve 20 years' imprisonment. (*Id.*) After unsuccessfully appealing his conviction, he moved for state habeas relief. (*Id.*) His petition was denied, and he appealed to the Georgia Supreme Court, which denied his certificate for probable cause to appeal. (*Id.* at 4-5.) Thompson then filed this federal habeas petition, asserting a single ground for relief:

> State [habeas] court erred in its decision when it denied claim of ineffective assistance of appellate counsel in violation of petitioner's 6th Amendment right to the United States Const. Appellate counsel fail to properly & effectively raise issue regarding medical evidence of B. Stewart in the context of ineffective assistance of trial counsel. He failed to properly establish a factual basis & present evidence supporting trial counsel's ineffectiveness claim for not presenting exculpatory medical evidence at motion for new trial hearing/direct appeal. This evidence would have directly contradicted the state's witnesses testimonies in which the state's case centrally rested on. And would've supported the defense's theory that A. Beach fired first & shot B. Stewart. Appellate counsel's action was a result of his inadequate investigation & preparation.[1]

---

[1] Respondents note that Thompson's claim is problematic as it is currently framed. (Doc. 6 at 2; doc. 6-1 at 4.) He states that *the state habeas court* erred in addressing a claim of appellate attorney ineffectiveness. (Doc. 1 at 7.) A § 2254 petitioner, however, cannot attack a defect in a collateral proceeding. That is, "an alleged defect in a collateral proceeding does not state a basis for [federal] habeas relief." *Quince v. Crosby*, 360 F.3d 1259, 1262 (11th Cir. 2004); *Spradley v. Dugger*, 825 F.2d 1566, 1568 (11th Cir. 1987) (noting that a valid petition must address claims related to the cause of petitioner's detention). Nevertheless, respondents charitably "construe[] the portion of this ground, asserting the state habeas court's decision was erroneous, as an argument that the state habeas court's decision should not be given

(Doc. 1 at 7, 10.)

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") placed "a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bell v. Cone*, 535 U.S. 685, 693 (2002) (AEDPA was intended "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."); see *Peterka v. McNeil*, 532 F.3d 1199, 1200-01 (11th Cir. 2008) (under AEDPA a federal court's review of a state court ruling is "greatly circumscribed and highly deferential to the state courts") (citation omitted); *Trotter v. Sec'y, Dep't of Corr.*, 535 F.3d 1286, 1290 (11th Cir. 2008) (AEDPA limits a federal court's review of a state court's decisions "and establishes a general framework of substantial deference for reviewing every issue that the state courts have decided.") (citations omitted). These restrictions on federal habeas review are set

---

deference under § 2254(d)." (Doc. 6-1 at 4-5.) The Court adopts respondents' construction and will address Thompson's petition as raising a claim of ineffective assistance of appellate counsel.

forth in 28 U.S.C. § 2254(d), which provides that a federal court may grant a writ of habeas corpus for a claim adjudicated on the merits in state court only if the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

The "threshold question" under § 2254(d)(1) is whether the habeas petitioner is seeking to apply a rule of law that was clearly established at the time his state court conviction became final. *Williams*, 529 U.S. at 390. Since the statute expressly provides that only pronouncements "by the Supreme Court of the United States" qualify as "clearly established Federal law," 28 U.S.C. § 2254(d)(1), a federal habeas court may not look to the "the case law of the lower federal courts" in determining what federal law is "clearly established." *Putnam v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001). Further, the statute "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412. These

4

"holdings -- the exclusive touchstone for clearly established federal law -- must be construed narrowly and consist only of something akin to on-point holdings." *House v. Hatch*, 527 F.3d 1010, 1015 (10th Cir. 2008).

So unless a prior Supreme Court decision "squarely addresses" the issue presented in the habeas case, *Wright v. Van Patten*, 552 U.S. 120, 128 S. Ct. 743, 746 (2008), or establishes a legal principle that "clearly extend[s]" to the conduct at issue in that case, then it cannot be said that the law is clearly established under AEDPA. *Id.* at 745; *Moses v. Payne*, 555 F.3d 742, 754 (9th Cir. 2009). Thus, "federal courts may no longer extract clearly established law from the general legal principles developed in factually distinct contexts." *House*, 527 F.3d at 1017. If the federal habeas court makes a threshold determination that the law was not clearly established at the time the state court issued its decision, then that finding is dispositive in the § 2254(d)(1) analysis, and there is no need for the Court to assess whether the state court's decision conflicts with controlling United States Supreme Court authority. *Id.*

But where the Supreme Court has decided the issue addressed by the state court, the federal habeas court must determine whether the state court's decision is "contrary to" or involves an "unreasonable

5

application" of the controlling precedent. These § 2254(d)(1) clauses have independent meaning and furnish separate bases for reviewing a state court's decisions. *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 404-05; *Putnam*, 268 F.3d at 1241 (11th Cir. 2001). A state court decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13. In contrast, a state court decision involves an "unreasonable application" of clearly established federal law where it correctly identifies the governing legal rule from the Supreme Court's cases but applies it unreasonably to the facts of the particular prisoner's case. *Id.* at 407-08, 413. Thus, "[a] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Instead, the state court's application of Supreme Court precedent must be "objectively unreasonable." *Id.* at 409; *Bell*, 535 U.S. at 694; *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001). That presents "a substantially higher

threshold" than the pre-AEDPA standard. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *see McDaniel v. Brown*, ___ U.S. ___, 2010 WL 58361 at * 6-7 (Jan. 11, 2010).

Federal courts also must presume state court factual findings to be correct unless they are rebutted by the petitioner "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This statutory presumption of correctness applies to findings of fact made by both state trial and appellate courts. *Dill v. Allen*, 488 F.3d 1344, 1354 (11th Cir. 2007). Such deference does not apply, however, to mixed determinations of law and fact. *Parker*, 244 F.3d at 836.

Finally, a state court's decision rejecting a constitutional claim on the merits is entitled to deference even if the decision is summary in nature and offers no discussion of the court's reasoning. *Wright v. Moore*, 278 F.3d 1245, 1253-54 (11th Cir. 2002) (two-sentence opinion affirming defendant's conviction constituted a rejection of his claim on the merits so as to warrant deference); *Parker*, 331 F.3d at 776 ("the summary nature of [the] decision does not lessen the deference that it is due"); *see Smith v. Spisak*, ___ U.S. ___, 130 S. Ct. 676, 688 (2010).

7

## III. ANALYSIS

Thompson contends that his appellate attorney, Orin Alexis, performed deficiently by failing to "properly and effectively" flesh out a claim of trial counsel ineffectiveness. (Doc. 1 at 7, 10.) In order to put the claim into context, some background is in order. At trial, the state relied upon testimonial evidence from four witnesses, including shooting victim Ben Stewart. (Doc. 9 at 3.) Thompson explains that the "testimon[y] highlighted on the facts that: petitioner shot Ben Stewart in his front leg, which initiated an exchange of gunfire between Arthur Beach and petitioner and/or petitioner's co-defendant (Carlos Gray) that left Keandre Twiggs and Ullysses Middleton shot, and that petitioner's sole purpose of returning to the scene was to seek revenge from his brother's (Jimmy) lost fight."[2] (*Id.* at 3.) According to Thompson, trial

---

[2] According to the Georgia Court of Appeals,

> the evidence showed that on October 19, 2001, Thompson, his brother Jimmy Thompson, and their friend Carlos Gray, set out to seek revenge on Jason Williams, who had beaten Jimmy Thompson in a fist fight earlier in the evening. When they entered Williams' neighborhood, they began harassing individuals they passed on the street, inquiring as to Williams' location. They did not find Williams, but instead encountered Arthur Beach, who had been with Williams at the time of the earlier fight. Beach was standing in front of the Middleton family home and told them that Williams was not around. Thompson then tried to goad his brother into fighting either Beach or another individual in the neighborhood. After his brother refused, Thompson approached Beach declaring that he was going to fight him himself.

counsel, Martin Hilliard, relied entirely upon cross-examination to show that petitioner acted in self-defense/justification, but he *should* have submitted "crucial" medical records showing that Ben Stewart was shot in the *back* of his leg, not the front. (*Id.* at 9.) Based upon that evidence, he could have shown that "A. Beach fired first & shot B. Stewart," which would strongly support Thompson's claim of self-defense/justification. (Doc. 1 at 10.) Hilliard, however, did not introduce the medical evidence

---

> Ben Stewart, a neighborhood resident and friend of Beach, happened upon the scene as he was walking up the street. Believing that Thompson and the others were threatening Beach, Stewart intervened and told them that, "[t]here don't need to be none of all that around here." Jimmy Thompson then approached Stewart as if he intended to strike him, but Thompson pushed Jimmy Thompson aside, and pulled out a gun which he pointed directly at Stewart's chest. As Thompson pulled the trigger, Stewart pushed the gun downward, so that when the gun fired, Stewart was struck in the thigh rather than the chest.
>
> When Stewart collapsed, Thompson, Gray, and Jimmy Thompson crossed the street and ran to the side of a nearby house, where Thompson continued to fire his weapon in the direction of Stewart, Beach and the Middleton house. Gray also began firing a weapon. Beach, who had a gun that had been concealed until this point, crouched next to some trash cans adjacent to the Middleton house and began returning fire. During the shoot-out, Ulysses Middleton, who was standing at the front door of his house, received a near fatal gunshot wound to the abdomen and Keandre Twiggs, who was standing near the Middleton house, was shot in the nose. Thompson, Gray, and Jimmy Thompson fled the scene. Thompson was arrested the following day after investigating officers interviewed the victims and the witnesses to the event.
>
> *Thompson v. State*, 281 Ga. App. 627, 627-28 (2006).

at trial. Hence, at Thompson's insistence Alexis argued during the motion for new trial that Hilliard was ineffective. (Doc. 9 at 5.)

Hilliard disagreed with Thompson's assessment of his performance. At the hearing on the motion for new trial, he explained:

> I subpoenaed the medical records of Ben Stewart.[3] What started that was a reference in Corporal Lopez's report as to the entry and exit wounds on Ben Stewart's thigh. . . . On the first part of the [hospital's emergency room] report it talked about the entrance wound being on the rear of Ben Stewart's leg and then it was scratched off and said that it was on the front. I'm using front and rear. They use anterior and posterior. And I spoke with an emergency room physician about that and he basically explained to me that that wasn't uncommon, that when a gunshot victim first comes in, it's not uncommon that they flip the wounds around like that, just because they are too busy treating the wounds to pay much attention and look at striations and things like that. And I found that that's a common error, it's a common mistake. And, basically, what the attending physician had done was go back and correct his notes as they were transcribed. . . . I also had Ben Stewart -- willingly, by the way, I might add -- to go in the bathroom with me and he undressed and actually showed me the wounds, and the wounds were consistent with the medical report as it was corrected, not as it was originally written. So, I had no reason to make a lot of sand about the medical reports, because the wounds, as they were shown to me and as they were in the amended medical reports, were consistent.

---

[3] The hospital contested Hilliard's subpoena. During a hearing on the matter, the trial judge noted that one of the records showed that the entrance wound was in the "right posterior thigh." (Doc. 7-20 at 26.)

10

(Doc. 7-27 at 77-78; *id.* at 89, 93-64.) He concluded that the "medical records didn't help us, I felt they actually hurt us," because they were consistent with the testimony at trial. (*Id.* at 89.)

The trial court summarily denied the trial counsel ineffectiveness claim. (Doc. 7-17 at 58.) Alexis then re-raised the claim before the Georgia Court of Appeals, which also denied it, noting that Hilliard

> did, in fact, subpoena the medical records about which Thompson complains. Moreover, [Hilliard] testified during the new trial hearing that the information contained within those records supported the prosecution's version of events and would have been harmful to the defense. Thompson has again failed to meet his burden to successfully illustrate ineffective assistance of [trial] counsel.

*Thompson*, 281 Ga. App. at 634. Undeterred, Thompson raised the trial counsel ineffectiveness claim again during his state habeas proceeding. The state habeas judge declined to consider it, since it had been raised and rejected on direct appeal. (Doc. 7-5 at 3 (state habeas order).) Anticipating that hurdle, Thompson also raised his claim as an enumeration of *appellate* attorney ineffectiveness -- the claim presently before the Court. Specifically, Thompson alleged that "appellate counsel was ineffective because [he] 'failed to properly and effectively raise issue

regarding medical evidence of B. Stewart in the context of ineffectiveness of trial counsel." (*Id.* at 7.)

After stepping through the *Strickland*[4] standard, the state habeas judge discussed Alexis's habeas hearing testimony. It noted that Alexis

---

[4] In *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the Supreme Court created a two-part test for determining whether counsel performed ineffectively. First, the petitioner must demonstrate that his attorney's performance was deficient, which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." 484 U.S. at 687. Second, he must demonstrate that the defective performance prejudiced the defense to such a degree that the results of the trial cannot be trusted. *Id.*

Under the performance prong, the reasonableness of an attorney's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. *Id.* at 690. It is generally appropriate to look to counsel's performance throughout the case in making such a determination. *Kimmelman v. Morrison*, 477 U.S. 365, 386 (1986). The petitioner carries a heavy burden, as "reviewing courts must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the petitioner must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689. Indeed, the petitioner must show that "'no competent counsel would have taken the action that his counsel did take.'" *Ford v. Hall*, 546 F.3d 1326, 1333 (11th Cir. 2008), *quoting Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).

Under the prejudice prong, petitioner must establish that there was a reasonable probability that the results would have been different but for counsel's deficient performance. *Kimmelman*, 477 U.S. at 375; *Strickland*, 466 U.S. at 696. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see also Lightbourne v. Dugger*, 829 F.2d 1012, 1022 (11th Cir. 1987); *Boykins v. Wainwright*, 737 F.2d 1539, 1542 (11th Cir. 1983).

The same *Strickland* test applies to claims of ineffective assistance of appellate counsel. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Smith v. Murray*, 477 U.S. 527, 535-36 (1986). In *Jones v. Barnes*, 463 U.S. 745 (1983), however, the Supreme Court held that the Sixth Amendment does not require appellate advocates to raise every non-frivolous issue. Effective appellate counsel should "'winnow out' weaker

"has been practicing law in Savannah, Georgia since 1972" and "has been handling criminal appeals for the past twenty years." (*Id.* at 8.) "Alexis spoke with Petitioner several times at the Chatham County Jail," "met with Petitioner at a prison in Albany, Georgia," "obtained and reviewed with Petitioner a copy of the clerk's file and trial transcript," and "discussed the Petitioner's case with his former trial attorney." (*Id.*) Alexis acknowledged "that Petitioner's main concern was obtaining the medical records of the victims in order to show how the shooting took place." (*Id.*) "He spoke with Petitioner's former trial attorney about the medical records in question," and he "recalled that trial counsel did not introduce the medical records at trial because they would have harmed the Defense rather than helped it." (*Id.*) After considering Alexis's testimony, the state habeas judge held that his performance did not fall below an objective standard of reasonableness. (*Id.* at 10.) Consequently, the state judge denied the claim.

---

arguments even though the weaker arguments may be meritorious." *Heath v. Jones*, 941 F.2d 1126, 1131 (11th Cir. 1991) (quoting *Barnes*, 463 U.S. at 751-52.) Appellate counsel need not assert every potential claim of error, even if his client urges him to do so, but instead should exercise his professional judgment and select only "the most promising issues for review." *Barnes*, 463 U.S. at 752.

13

Thompson disagrees with the state habeas judges' determination. He contends that "Alexis never intended to be successful on this issue because he agreed with trial counsel [that the evidence was not helpful] without considering important factors and the law involved." (Doc. 9 at 11.) Moreover, Alexis failed to investigate and prepare the claim properly. (*Id.* at 12.) Finally, Alexis should have pointed out Hilliard's failure to personally interview the treating physician and obtain a medical expert to examine the wound. In sum, it was ineffective of Alexis to simply rely upon Hilliard's conclusion that the bullet's entry point was flipped around by mistake by the medical staff during Stewart's treatment.[5] (*Id.* at 6-8.)

Thompson would impose an incredibly rigorous burden upon his appellate attorney. Not only should Alexis have subjectively believed in the merits of the trial ineffectiveness claim, he should have followed all investigative leads that *might* have led to favorable evidence in order to

---

[5] Other evidence, Thompson says, further supported his contention. Alexis should have pointed to evidence discovered during his first trial (which was declared a mistrial) showing that ejected shell casings came from Beach's gun and were in the "immediate area to the rear of where B. Stewart was shot." (Doc. 9 at 8.) Similarly, Alexis should have raised Corporal Lopez's reports, which reflected "that he was advised by 'medical staff' at the hospital that night that [Ben Stewart] had an entrance wound to the back of his leg, exiting the front." (*Id.* at 9.) In sum, "[a]ppellate counsel should have found error in trial counsel for relying on inconclusive findings rather than utilizing the medical reports." (*Id.* at 11.)

"properly and effectively" raise it -- simply raising the substance of the claim was not enough.⁶ While a perfect appellate attorney with unlimited resources might have pursued the medical records to the utmost extent, unearthing every detail and calling in hordes of medical experts, the Sixth Amendment does not require perfection. The state habeas court only needed to determine whether Alexis performed below a minimal level of competency in his presentation of the claim, and it found that he did not. The state habeas judge reasonably applied *Strickland* in finding that appellate counsel's performance did not fall below that minimum level of competency when he raised Thompson's claim during the motion for new trial and on appeal.⁷ Hence, Thompson's claim is meritless.

---

⁶ While Thompson complains that both trial and appellate counsel failed to investigate the claim properly, he has not presented any conclusive or even exceptionally persuasive evidence undermining Hilliard's conclusion that Stewart's attending physician merely corrected the medical records after transcription. Nor has he shown that Hilliard's failure to further investigate or present the evidence was prejudicial in light of the other testimony presented at trial.

⁷ Any deficiency here arose from Alexis's decision to raise the claim at all. He raised it at Thompson's insistence rather than relying upon his own judgment in choosing his appellate arguments. (Doc. 7-6 at 16, 30-33.) An attorney does not serve as a mere mouthpiece or alter ego for his client, obligated to urge any argument that his client wishes him to file. *Thomas v. Tenneco Packaging Co.*, 293 F.3d 1306, 1337 (11th Cir. 2002) ("An attorney should not be an unreflecting conduit through which the opinions or desires of a client or witness are permitted to flow unchecked."). Rather, an attorney has a duty to exercise his independent professional judgment and

## IV. CONCLUSION

Thompson has not shown that the state habeas court's decision is contrary to or an unreasonable application of clearly established federal law, or that its decision involved an unreasonable determination of the facts. Accordingly, this Court must defer to the state habeas court's merits adjudication of the appellate counsel claim and deny relief. Thompson's 28 U.S.C. § 2254 petition should be **DENIED**.

**SO REPORTED AND RECOMMENDED** this <u>29th</u> day of March, 2010.

/s/ <br>
UNITED STATES MAGISTRATE JUDGE <br>
SOUTHERN DISTRICT of GEORGIA

---

to file raise only those claims that have potential merit. *Id.* Had Thompson raised such a claim, however, he could not show resulting prejudice, especially where the claim was raised at *his* insistence.